**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANTHONY GATTINERI, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>WYNN MA, LLC and WYNN RESORTS, )<br>LIMITED, )<br>)<br>    Defendants )<br><br>WYNN MA, LLC, )<br>)<br>    Plaintiff-in-Counterclaim, )<br>)<br>v. )<br>)<br>ANTHONY GATTINERI, )<br>)<br>    Defendant-in-Counterclaim. )<br>) | Civil Action No. 1:18-cv-11229 |

**DEFENDANTS WYNN MA, LLC AND WYNN RESORTS, LTD.'S**
**MEMORANDUM IN SUPPORT OF THEIR**
**<u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

**INTRODUCTION**

Pursuant to Federal Rule 37 Wynn MA, LLC ("Encore") and Wynn Resorts, Ltd. ("Wynn") (together "Defendants") file this Motion to Compel production of certain documents that appear on Plaintiff Anthony Gattineri's Privilege Log. Specifically, Defendants seek production of 93 documents that Defendants believe are responsive to several of Defendants' Requests for Production of Documents.[1] These documents reflect communications between some combination of the following: Mr. Gattineri, attorneys at Davis Malm & D'Agostine, P.C. ("Davis Malm")

---

[1] A list of the 93 documents Defendants seek is attached hereto at Ex. 1. The contents of this exhibit comes directly from Mr. Gattineri's Privileged Log, which is attached hereto as Ex. 9.

1

(including, but not limited to, Paul Feldman, Amy L. Fracassini, J. and Gavin Cockfield), and, Daniel Doherty, Esq. and Brad Bailey, Esq. (Mr. Gattineri's individual attorneys). Attorney Feldman represented FBT Everett Realty, LLC ("FBT"), of which Mr. Gattineri is a member, in connection with Encore's purchase of land in Everett that is now the site of the Encore Boston Harbor casino (the "Property"). These communications have been withheld based on the Attorney-Client Privilege (the "Privilege"), the Work Product Doctrine, or as a communication pursuant to a joint defense agreement.[2]

Defendants do not believe either the Privilege or the Work Product Doctrine protect these 93 communications for two reasons. First, there is no attorney-client relationship between Mr. Gattineri and Attorney Feldman because Attorney Feldman represented the entity—FBT—as opposed to Mr. Gattineri individually. Thus, FBT, and not Mr. Gattineri, held the Privilege over communications with Attorney Feldman in connection with the sale of the Property to Encore. Second, FBT has waived that Privilege first by placing Attorney Feldman's legal advice "at issue" in a related legal malpractice action, and also by disclosing confidential communications with Attorney Feldman to third parties in this (and other) pending lawsuits. Moreover, 30 of the 93 documents on Ex. 1 appear to contain a third party in the To/From/CC/BCC line of the privilege log, and some of them do not even contain Mr. Gattineri.[3] As a result, the communications cannot be withheld based on the Privilege because they simply do not meet the criteria required to assert the Privilege.

---

[2]   Although not reflected anywhere on the Privilege Log, through emails with Mr. Gattineri's counsel pursuant to Local Rule 7.1, Defendants understand that Mr. Gattineri alleges certain communications are subject to two alleged joint defense agreements.

[3]   *See* Ex. 1 entries 3-5, 22, 24-25, 27-30, 33-34, 36-38, 40-44, 47, 51, 55-57, 64, 66-67, 73, 75, 80. These entries represent communications including Mr. Gattineri and Attorney Feldman, which Defendants contend are not subject to the Privilege. But which also include one or more of Mr. Gattineri's individual attorneys—Daniel Doherty, Esq. and/or Brad Bailey, Esq.—their presence on the communications also defeats the Privilege.

Therefore, Defendants respectfully request that this Court compel Mr. Gattineri to produce the documents (and their attachments) indicated on Ex. 1. In the alternative, Defendants request that this Court conduct an *in camera* review of the documents indicated on Ex. 1 to determine whether they are indeed protected by the Privilege or the Work Product Doctrine.

**I.     Background.**

As alleged in Mr. Gattineri's Complaint, on December 19, 2012, FBT[4] and Encore entered into an Option Agreement regarding Encore's potential purchase of the Property, upon which Encore proposed to build a casino in the event it received a gaming license from the Massachusetts Gaming Commission (the "Commission"). *See* Complaint [Dkt. No. 1] at Introduction.[5] Following the execution of the Option Agreement, the Commission became concerned that there were additional owners in FBT beyond the three who were previously disclosed to investigators. *Id*. The Commission told Encore it could not proceed with the purchase of the Property. *Id.* FBT and Encore then agreed to enter the Ninth Amendment to the Option Agreement (the "Ninth Amendment"), under which Encore would purchase the Everett Parcel from FBT for $35 million, instead of the $75 million purchase price reflected in the original Option Agreement. *See* Ex. 2 at ¶¶ 63-64. In addition, the Commission required that each individual FBT member submit a certificate stating, under oath, their ownership in FBT was for themselves only and no other persons or entities. *See* Complaint [Dkt. No. 1] at Introduction. Encore ultimately obtained the gaming license from the Commission in September, 2014 and purchased the Everett Parcel a few

---

[4]     The following individuals possessed ownership interests in FBT at some point or another: Gary DeCicco, Dustin DeNunzio (Manager), Anthony Gattineri, Charles Lightbody, and Paul Lohnes. *See* Ex. 2 (First Amended Complaint in *FBT Everett Realty, LLC, Dustin DeNunzio, Anthony Gattineri v. Paul Feldman & Davis Malm & D'Agostine, P.C. v. Charles Lightbody (Third Party Defendant)*) ¶¶ 16-18.

[5]     For ease of reference, Defendants have cited to portions of Mr. Gattineri's Complaint for background. Defendants do not agree with Plaintiff's characterization of the facts.

3

months later pursuant to the Ninth Amendment for approximately $35 million. *Id.* at Introduction and ¶ 37.

Currently, there are three pending lawsuits that arise from circumstances surrounding Encore's purchase of the Property from FBT: (1) *FBT Everett Realty, LLC, Dustin DeNunzio, and Anthony Gattineri v. Paul Feldman & Davis Malm & D'Agostine, P.C. v. Charles Lightbody (Third Party Defendant)*, No. 1784-cv-03547, which was filed in Suffolk Superior Court[6]; (2) *FBT Everett Realty, LLC v. Massachusetts Gaming Commission v. Wynn MA, LLC (Third Party Defendant)*, No. 1881-cv-00304, which was filed in the Business Litigation Section in Suffolk Superior Court[7]; and (3) this Action. A brief synopsis of each lawsuit appears below to provide the Court with background to assist the Court in assessing this Motion.

A. *FBT Everett Realty, LLC, Dustin DeNunzio, and Anthony Gattineri v. Paul Feldman & Davis Malm & D'Agostine, P.C. v. Charles Lightbody (Third Party Defendant).*

In June 2018, FBT, Mr. Gattineri, and Dustin DeNunzio filed a legal malpractice action against Attorney Feldman and Davis Malm (the "Legal Malpractice Action"). In the Legal Malpractice Action, the plaintiffs allege that "Mr. Feldman, along with his law firm, was hired to guide the Plaintiffs through the development and potential sale of a parcel of land, but instead he provided, among other things, an untimely execution of critical documents in advance of the deal, inadequate due diligence prior to providing legal advice, and ineffective assistance during a government investigation." Ex. 2 at Introduction. The First Amended Complaint ("FAC") contains over 50 factual allegations related to Mr. Feldman's representation of FBT in connection with the sale of the Property to Encore. *Id.* at ¶¶ 12-71. Many of these allegations directly reference communications between FBT members and Attorney Feldman and disclose, in a public filing,

---

[6] Operative complaint attached as Ex. 2.
[7] Operative third party complaint attached as Ex. 3.

legal advice that Mr. Feldman provided to the organization. *See, e.g., id.* at ¶ 36, 45, 49, 53, 54. In that action, Attorney Feldman's entire file was produced to all parties, including Charles Lightbody. *See* Ex. 4 (indicating Attorney Feldman's file was produced to Lightbody on August 1, 2018). Charles Lightbody was no longer an FBT member at the time of that document production.[8/]

> B.  *FBT Everett Realty, LLC v. Massachusetts Gaming Commission v. Wynn MA, LLC (Third Party Defendant) ("FBT v. MGC v. Wynn").*

In this case, FBT asserted four causes of action against the Commission, each of which sought damages from the Commission for the reduction in price paid by Encore to FBT for the Property. *See* Ex. 3 at ¶15. The court dismissed all but one of FBT's claims against the Commission, leaving FBT's regulatory taking claim as the only remaining claim in FBT's underlying action against the Commission. *See id.* at ¶¶16-17. In turn, the Commission filed a third party complaint against Encore asserting claims for unjust enrichment, contribution, and indemnification aimed at recovering, in whole or in part, the amount of damages that might potentially be awarded to FBT on its underlying claim against the Commission for a regulatory taking. *See id.* at ¶1. On October 17, 2019, FBT produced 37,373 pages of documents to the Commission and Encore including certain communications between Attorney Feldman and FBT in connection with the sale of the Property.

> C.  **This Action.**

On June 12, 2018, Mr. Gattineri filed the complaint in this Action. In addition to the events surrounding the purchase of the Property and the execution of the Ninth Amendment in the fall of 2013, Mr. Gattineri's allegations also relate to the events leading up to the signing of the

---

[8/]   Indeed, according to the Legal Malpractice Action Charles Lightbody was no longer an FBT Member in 2012. Ex. 2 at ¶¶ 21-26.

certificates that were required by the Commission from each FBT member. In this case, Mr. Gattineri alleges that on June 14, 2014 then-Encore President Robert DeSalvio met with Anthony Gattineri in San Diego, California. *See* Complaint [Dkt. No.] at Introduction. He further alleges that, at that meeting, Mr. DeSalvio made the following offer to Mr. Gattineri: "if Anthony Gattineri signed the required Certificate and Wynn obtained the casino license for a casino on the FBT property and bought the property, Wynn would 'make Anthony Gattineri whole' by providing him with his percentage of the purchase price reduction (which is $18,676,000)." *Id.*

**II.   Procedural Background.**

In this Action, on November 6, 2018, Defendants issued a First Request for Production of Documents to Gattineri seeking, among other documents, the following:

> All documents reflecting communications between You and Paul Feldman and/or Davis Malm & D'Agostine, P.C. ("Davis Malm") concerning Encore, the Everett Property, the Option Agreement the Certificate, and/or Ninth Amendment.

Mr. Gattineri objected to this request relying, in part, on the attorney-client privilege.[9/]

Defendants also sought documents from Paul Feldman and Davis Malm pursuant to two Rule 45 Subpoenas, the first directed to Paul Feldman on February 19, 2019 (the "February Subpoena") and the second directed to Davis Malm on March 20, 2019 (the "March Subpoena"). The February Subpoena requested Attorney Feldman to produce all documents in his possession or control, for the period July 1, 2012 through January 15, 2015, concerning FBT, the Property, Encore's option to purchase the Property from FBT, Anthony Gattineri, the Commission's investigation of FBT and Mr. Gattineri, the $40 million reduction in the purchase price of the Property, and the Certificate executed by Mr. Gattineri on or around June 14, 2014. *See* Ex. 6. FBT, Mr. DeNunzio, and Mr. Lightbody had no objection to Attorney Feldman complying with

---

[9/]   Responses attached as Ex. 5. While the 93 communications appear to be directly responsive to Request No. 21, they are also likely responsive to Request Nos. 3-8, 12, 18, and 24.

6

the subpoena. *See id.* at p. 2. Mr. Gattineri, however, opposed the production based a claim of attorney-client privilege. *Id.* Therefore, counsel for Attorney Feldman and Davis Malm directed Defendants to seek these documents from Mr. Gattineri. *Id.* The March Subpoena requested Davis Ma1m to produce all documents and communications produced by FBT and the individual parties in the Legal Malpractice Action. *See* Ex. 7 at p. 2. Again, FBT, Mr. DeNunzio, and Mr. Lightbody consented to the production, but Mr. Gattineri objected based on a claim of attorney-client privilege. *Id.* Therefore, counsel for Attorney Feldman and Davis Malm directed Defendants to seek these documents from Mr. Gattineri. *Id.*

As a result, on June 12, 2019, Defendants issued a Second Request for Production of Documents to Mr. Gattineri seeking the documents requested in the February Subpoena and March Subpoena. Mr. Gattineri also objected to this request relying, in part, on the attorney-client privilege.[10] Mr. Gattineri began a rolling document production on July 19, 2019. Mr. Gattineri made a subsequent document production as recently as November 8, 2019. Mr. Gattineri produced a Privilege Log on September 10, 2019 and September 19, 2019 (sorted in chronological order).[11]

Defendants have identified 93 entries on that Privilege Log that occurred during the relevant time period of October 18, 2013 to January 13, 2015, which Defendants do not believe are protected by the Privilege or Work Product Doctrine. In accordance with Fed. R. Civ. P. 37, the Parties had a meet and confer on September 27, 2019, and exchanged correspondence thereafter to further narrow the issues presented in this motion. The Parties conferred again by phone on November 7, 2019, by email on November 11, 2019, and find themselves at an impasse with respect to these 93 documents.

---

[10] Responses attached as Ex. 8.
[11] Attached hereto as Ex. 9. The attached exhibit represents an excerpt of the September 19, 2019 log because Defendants are currently only seeking production of documents for the time period of October 18, 2013 to January 13, 2015.

7

**LEGAL STANDARD**

The burden to establish an applicable privilege rests with the party resisting discovery. *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).[12/] "If the privilege is established and the question becomes whether an exception to it obtains, the devoir of persuasion shifts to the proponent of the exception." *FDIC v. Ogden Corp.,* 202 F.3d 454 (1st Cir. 2000); *see McMorgan & Co. v. First Cal. Mortgage Co.*, 931 F.Supp. 699, 701 (N.D. Cal. 1996). The federal courts look to Massachusetts law to determine the scope of both the asserted privilege and the exception. *See* FED. R. EVID. 501; 6 James Wm. Moore et al., Moore's Federal Practice § 26.47[4] (3d ed. 1999).

In Massachusetts, the attorney-client relationship comes into being "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *DeVaux v. Am. Home Assurance Co.,* 444 N.E.2d 355, 357 (Mass. 1983) (quoting *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977)); *accord Sheinkopf v. Stone,* 927 F.2d 1259, 1264 (1st Cir. 1991) (applying Massachusetts law); *Bays v. Theran*, 639 N.E.2d 720, 723 (Mass. 1994). The Privilege "extends to all

---

[12/]   Typically the party seeking an order compelling discovery bears the initial burden of showing that the discovery requested is relevant,' but once that showing is made, 'the objecting party bears the burden of showing that a discovery request is improper.'" *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298-DJC, 2018 U.S. Dist. LEXIS 607, at *1 (D. Mass. Jan. 2, 2018) (quoting *Continental W. Ins. Co. v. Opechee Constr. Co.*, No. 15-cv-006-JD, 2016 U.S. Dist. LEXIS 54716, at *1 (D.N.H. Apr. 25, 2016)); *see also Aronstein v. Mass. Mut. Life Ins. Co.,* No. 15-12864-MGM, 2017 U.S. Dist. LEXIS 100867, at *6 (D. Mass. June 29, 2017) (Explaining that the moving party's initial burden to demonstrate relevance "is not onerous."). Here, Mr. Gattineri concedes the relevance of the material sought by placing the communications on his Privilege Log, which only contains documents that were Responsive to Defendants' document requests. Moreover, based on the brief description of each document provided by the Plaintiff on the Privilege Log, the withheld documents all appear related to the Property, Encore's purchase of the Property, and regulatory issues in connection with the sale of the Property – all issues of importance in this Action. As such, the burden shifts to Mr. Gattineri to demonstrate that the communications are protected by either the Privilege or the Work Product Doctrine or both.

communications made to an attorney or counsellor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations." *Hatton v. Robinson*, 31 Mass. 416, 421 (1833).

The Privilege, however, is not absolute and can be waived. *See FDIC v. R.W. Beck, Inc.*, No. 01-CV-11982-RGS, 2004 U.S. Dist. LEXIS 12128, at *3 (D. Mass. July 1, 2004); *see also Greater Newburyport Clamshell All. v. Pub. Serv. Co. of New Hampshire*, 838 F.2d 13, 17 (1st Cir. 1988) (finding "[t]he common law's attorney-client privilege, recognized by the federal courts as an exception to discovery, can be waived either expressly or implicitly."). By way of example, the Privilege may be waived "when a party injects certain claims or defenses into the case which implicate, i.e., put "at issue" the communications of counsel." *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 275 (D. Mass. 2015); *see also FDIC*, 2004 U.S. Dist. LEXIS 12128, at *6 (finding "[t]he legal opinions and advice given by others that may have contributed to the bankruptcy debacle is not only enmeshed with, but central to any defense of [the attorney's] defense of the [Plaintiff's] claims."). Such an implicit waiver of the Privilege operates to preserve fairness by preventing litigants, such as Mr. Gattineri, from attempting to wield the Privilege as both a sword and a shield. The Privilege may also be waived by "a voluntary disclosure to a third party … even if the third party agrees not to disclose the communications to anyone else." *In re Lupron Mktg. & Sales Practices Litig.*, 313 F. Supp. 2d 8, 10 (D. Mass. 2004) (quoting *Westinghouse Elec. Corp. v. Republic of Phil.*, 931 F.2d 1414, 1427 (3d Cir. 1991).

**ARGUMENT**

**I.     There is No Attorney-Client Privilege Between Mr. Gattineri and Attorney Feldman, Because, FBT, Not Mr. Gattineri, Held the Privilege.**

The First Circuit is clear: "a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity, notwithstanding the existence of an individual attorney-client relationship between him and the corporation's counsel." *In re Grand Jury Subpoena,* 274 F.3d 563, 573 (1st Cir. 2001). FBT has implicitly waived the privilege by placing Attorney Feldman's advice "at-issue" in the Legal Malpractice Action, and directly waived the Privilege by disclosing confidential communications in various document productions. (*See infra* Section II).[13/] As a result, Mr. Gattineri may only make a claim of attorney-client privilege if he can demonstrate that Attorney Feldman represented him individually. *Id.* at 571.

If the only attorney-client privilege at stake is that of FBT, then FBT's waiver in the Legal Malpractice Action and through disclosing privileged documents defeats Mr. Gattineri's claim of privilege. "After all, the law is settled that a corporation's attorney-client privilege may be waived by current management." *Id.*; *see e.g., United States v. Okum,* 281 F. App'x 228 (4th Cir. 2008) (citation subject to Fed. R. of App. P. 32.2) (Court of appeals affirmed that the subjective belief of the sole shareholder and CEO of the defendant that corporate counsel represented him individually was neither credible nor reasonable in light of corporate counsel's testimony to the contrary); *Applied Tech. Int'l, Ltd. v. Goldstein,* No. 03-848, 2005 U.S. Dist. LEXIS 1818 (E.D. Pa. Feb. 7, 2005) (Court found that the legal advice had been given to the corporation and not to the individual and in subsequent patent litigation between the inventor and the corporation, the privilege did not protect communications between attorney and inventor as against the corporation).

---

[13/]    Moreover, FBT did not object to the Feldman Production. *See* Ex. 6 at p. 2.

### A. Mr. Gattineri Does Not Meet the Five-Part Test to Establish that Attorney Feldman Represented Him Individually.

Where an attorney represents a corporate entity, it is assumed that attorney represents the entity and not individuals within the corporation. Indeed, "the default assumption is that the attorney only *represents* the corporate entity, not the individuals within the corporate sphere, and it is the individuals' burden to dispel that presumption." *Grand Jury Subpoena,* 274 F.3d at 571 (emphasis in original); *see also United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989). To determine when an attorney representing a corporation also represents an individual employee, the First Circuit has adopted a five-part test. *See Grand Jury Subpoena,* 274 F.3d at 571 (applying the test from *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F.2d 120 (3d Cir. 1986)).

> To demonstrate individual representation, an employee must show the following:
>
> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversations with [counsel] *did not concern matters within the company or the general affairs of the company.*

*Id.* (citing *Bevill*, 805 F.2d at 123 (emphasis added)). Indeed, individuals "may only assert an individual privilege to the extent that communications regarding individual acts and liabilities are segregable from discussions about the corporation." *Id.* at 573.

Here, Mr. Gattineri cannot meet the five-part test required above. In the first place, Attorney Feldman and Davis Malm expressly deny that he or it represented Mr. Gattineri in an

individual capacity.[14] Indeed, documents produced in this (and other) pending lawsuits demonstrate that Attorney Feldman represented the entity, and Mr. Gattineri was represented, in an individual capacity, by other attorneys including Daniel Doherty, Esq. *See* Ex. 11.[15] Moreover, Mr. Gattineri has not made any showing as to the first four factors of the five-part test above; but, even if he had, Mr. Gattineri cannot demonstrate the fifth element: that Attorney Feldman's alleged individual representation of Mr. Gattineri "did not concern matters within the company or the general affairs of the company."

First, the allegations in the Legal Malpractice Action brought by FBT *and Mr. Gattineri* reveal that the scope of Attorney Feldman's representation was limited to issues surrounding the sale of the Property. By way of example, ¶ 19 of the Legal Malpractice Action complaint alleges, "Mr. Feldman continued to advise and provide legal advice to FBT and its owners individually *concerning the Parcel and its potential development or sale.*" Ex. 2 at ¶ 19 (emphasis added). The advice that Attorney Feldman gave, whether to FBT or the individual owners—including Gattineri—all related to FBT's sale of the Property to Encore and, is therefore not segregable from discussion about the corporation.

In addition, the very Privilege Log provided in this Action, upon which Mr. Gattineri relies to assert the alleged Privilege between himself and Attorney Feldman, belies any claim that Attorney Feldman's alleged individual representation of Mr. Gattineri "did not concern matters within the company or the general affairs of the company." *See* Ex. 9. For example, Privilege Log entry Gattineri-Wynn Log – 00254 is an email from Mr. Gattineri to Paul Feldman, Dustin

---

[14] There is an allegation in Legal Malpractice Action that Attorney Feldman represented Mr. Gattineri individually. Ex. 2 at ¶ 57. Attorney Feldman and Davis Malm expressly deny that Attorney Feldman was counsel to Mr. Gattineri. Ex. 10 at ¶ 57.
[15] Ex. 11 (Tabs 6-13) contains examples of emails showing that Attorney Feldman represented FBT, not Mr. Gattineri.

DeNunzio, and Paul Lohnes. Mr. Gattineri withheld this communication based on the "Attorney-Client" Privilege stating the communication is an "[e]mail providing information for the purpose of obtaining legal advice *regarding sale of Everett casino parcel*." Ex. 9 (emphasis added). Privilege Log entry Gattineri-Wynn Log – 00727 is an email from Mr. Gattineri to Paul Feldman. Mr. Gattineri also withheld this communication pursuant to the "Attorney-Client" privilege relying on the *identical* document description: "Email providing information for the purpose of obtaining legal advice *regarding sale of Everett casino parcel*." Ex. 9 (emphasis added).

Because Mr. Gattineri's Privilege Log makes no distinction, Defendants can only guess which communications Mr. Gattineri withheld because of Attorney Feldman's representation of FBT as opposed to his alleged representation of Mr. Gattineri. Assuming entry 00254 was withheld in connection with Attorney Feldman's representation of FBT and entry 00727 was withheld in connection with Attorney Feldman's alleged individual representation of Mr. Gattineri as an individual, both appear to contain "advice regarding sale of Everett casino parcel." Ex. 9. Mr. Gattineri simply cannot maintain that entry 00727 is privileged pursuant to any alleged individual representation. FBT's sale of the Property to Encore is not segregable from discussion about or concerning the corporation; to the contrary it explicitly involves the corporation and its decision to pursue the land transaction. As a result, Mr. Gattineri cannot establish that he had an individual attorney-client relationship with Attorney Feldman and may not continue to withhold communications on those grounds.

**II.      FBT Has Waived its Attorney-Client Privilege Related to Attorney Feldman's Representation of FBT in the Sale of the Property to Encore In Multiple Ways.**

      **A.      FBT Placed Communications with Attorney Feldman "At Issue" in the Legal Malpractice Action Thereby Implicitly Waiving the Privilege. [16]**

In Massachusetts, it is accepted, "as a general principle, that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case." *Darius v. Boston,* 741 N.E.2d 52, 55 (Mass. 2001); *see also Greater Newburyport Clamshell All. v. Pub. Serv. Co. of New Hampshire*, 838 F.2d 13 (1st Cir. 1988); *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346 (D. Mass. 1998); *Sax v. Sax*, 136 F.R.D. 541 (D. Mass. 1991). In *Darius* the court explained that a waiver of the attorney-client privilege may be appropriate in a case "where a party relies on 'advice of counsel' in its claim or defense." *See id.* at 56, n.7. Indeed, "[a] party is considered as having waived its privilege if '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.'" *Savoy*, 178 F.R.D. at 350 (quoting *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

      The Legal Malpractice Action filed against Attorney Feldman and Davis Malm meets all three of these criteria. First, the FAC, publicly filed on behalf of FBT (and Mr. Gattineri for that matter), affirmatively placed "at issue" Attorney Feldman's advice to the company related to FBT's sale of the Property to Encore. Second, the more than 50 factual allegations contained in the FAC not only put the protected information "at issue" by making it relevant to that case, but also actually disclose the scope and content of Attorney Feldman's representation of FBT. The

---

[16]     Even if there was an attorney-client relationship between Attorney Feldman and Mr. Gattineri (there was not), Mr. Gattineri has also waived the Privilege by joining in the Legal Malpractice Action.

FAC contains at least a dozen allegations that expressly reveal advice, counsel, and instructions that Attorney Feldman gave the company or its representatives with respect to the sale of the Property. *See* Ex. 2 at ¶¶ 19, 23, 25, 36, 38, 39, 44, 45, 49, 53, 54, 56, 58, 59. Finally, if Mr. Gattineri is permitted, in this Action, to assert the Privilege that FBT waived in the Legal Malpractice Action, Defendants will be denied access to information important to their defense.

If upheld, Mr. Gattineri's attempted selective use of the privilege in these two cases would allow him to do exactly what the courts have prohibited: use the attorney-client privilege as both a sword and a shield.  In the Legal Malpractice Action, Mr. Gattineri is attempting to use the Privilege as a sword by placing Attorney Feldman's advice directly at issue in the claims in the case by disclosing the content of that advice in the FAC. Yet, in this Action, Mr. Gattineri is attempting to use the Privilege as a shield, trying to assert a Privilege that FBT has already waived in the Legal Malpractice Action. Finding an implied waiver in these circumstances would preserve fairness and prevent Mr. Gattineri from selectively disclosing fragments helpful to his legal malpractice case and entombing other (unhelpful) fragments in this Action, thereby "kidnap[ing] the truth-seeking process." *Cue, Inc. v. Gen. Motors LLC*, No. 13-12647-IT, 2015 U.S. Dist. LEXIS 104638, at *24-25 (D. Mass. Aug. 10, 2015) (quoting *In re Keeper of Records*, 348 F.3d 16, 24 (1st Cir. 2003)).

### B. FBT Waived the Privilege By Disclosing Communications With Attorney Feldman Related to the Sale of the Property in Several Pending Lawsuits.

Not only has FBT implicitly waived the attorney-client privilege with respect to communications between FBT, its owners, and Attorney Feldman in connection with FBT's sale of the Property to Encore by placing that advice "at-issue" in the Legal Malpractice Action, FBT has directly waived that privilege by producing many of these communications to third parties in

various pending lawsuits.[17/] First, FBT produced documents, including its privileged communications with Attorney Feldman during 2012-2014, to all parties in the Legal Malpractice Action, including Charles Lightbody, who was no longer a member of FBT after sometime in 2012. Ex. 6 at p. 2 ("FBT and the Individuals have produced both privileged and non-privileged documents."); Ex. 2 at ¶¶ 21-26. Next, FBT produced documents, including its privileged communications with Attorney Feldman during 2012-2014, to both the Commission and Encore in the *FBT v. MGC v. Wynn* action. By producing such materials, FBT has again waived its attorney-client privilege over communications with Attorney Feldman and/or Davis Malm.

In addition to FBT's disclosure of privileged information through document productions, FBT originally assented to Defendants' requests for production of documents directed to Paul Feldman and Davis Malm contained in the February and March Subpoenas. *See* Exs. 6 at p. 2 and 7 at p. 2. Indeed, in responding to an email from counsel for Attorney Feldman and Davis Malm inquiring whether the parties objected to complying with Defendants' request for production of documents, counsel for FBT responded:

> **From:** Kevin Smith [mailto:ksmith@arrowoodllp.com]
> **Sent:** Wednesday, March 06, 2019 2:22 PM
> **To:** Grossbaum, David A.
> **Cc:** Conte, Daniel R.; Lisa Arrowood; William McGonigle; 'sgordon@gordonfirm.com'; Charles M. Waters; 'alex@ahdeallaw.com'; rdisorbo@gordonfirm.com; tgordon@gordonfirm.com
> **Subject:** RE: Draft R 45 Subpoena Davis Malm [IN PROGRESS].DOCX
>
> David:
>
> FBT does not object to the below request.
>
> Kevin
>
> _____
> Kevin B. Smith
> <image001.jpg>
> 10 Post Office Square
> 7th Floor South

---

[17/]   Ex. 11 (Tabs 1-5) contains examples of documents showing that FBT has waived its attorney-client privilege with Attorney Feldman related to its sale of the Property to Encore.

Ex. 7 at 3. By consenting to the production of these documents, FBT again exhibited a decision to waive its Privilege associated with its communications with Attorney Feldman and/or Davis Malm in connection with the sale of the Property to Encore. This production never occurred, however, because Mr. Gattineri asserted a privilege—that does not exist—and counsel for FBT and Davis Malm directed Defendants to request the documents from Mr. Gattineri instead. Defendants made that request in their Second Request for Production of Documents to Mr. Gattineri, to which Mr. Gattineri objected and refused to produce documents.

Finally, in response to a Rule 45 Subpoena issued by Defendants in this Action, FBT has produced a number of communications between Attorney Feldman and its owners in this Action.[18] In particular, FBT produced an October 18, 2013 email bearing bates number FBT-SUB00000140.[19] This document is an email from Mr. Gattineri to Paul Feldman, Dustin DeNunzio, and Paul Lohnes and appears to be a privileged communication related to the sale of the Property to Encore. Mr. Gattineri, on the other hand, appears to have withheld this same document based on the Privilege. Gattineri-Wynn Log – 00254 is also an October 18, 2013 email from Mr. Gattineri to Paul Feldman, Dustin DeNunzio, and Paul Lohnes. If these are indeed the same email, Mr. Gattineri may not assert a Privilege on behalf of FBT that has been affirmatively waived.[20]

---

[18] A copy of that subpoena is attached hereto as Ex. 12, and Ex. 11 (Tabs 1-5) contains examples of documents that have been produced, which evidence FBT's waiver of is Privilege.
[19] Attached hereto as Ex. 11 (Tab 1).
[20] Though Defendants have received some of Mr. Gattineri's communications through third party subpoenas, Defendants have not received all responsive, non-privileged materials from Plaintiff.

17

### III. Thirty of the Ninety-Three Communications Are Not Privileged Because they Contain a Third Party.

Finally, 30 of the 93 documents on Ex. 1 contain a non-privileged party in the To/From/CC/BCC line of the privilege log; and some of these communications do not contain Mr. Gattineri at all. For example, Mr. Gattineri does not appear on entry Nos. 6, 17, 38, 39, 43, 44, 49, and 93. Therefore, he cannot invoke a claim of privilege on these documents and they should be produced. The Privilege may also be waived by "a voluntary disclosure to a third party … even if the third party agrees not to disclose the communications to anyone else." *In re Lupron Mktg. & Sales Practices Litig.*, 313 F. Supp. 2d 8, 10 (D. Mass. 2004) (quoting *Westinghouse Elec. Corp. v. Republic of Phil.*, 931 F.2d 1414, 1427 (3d Cir. 1991). As a result, the communications cannot be withheld based on the Privilege because they simply do not meet the criteria required to assert the Privilege.[21] These entries represent communications between Mr. Gattineri and Attorney Feldman, which Defendants contend are not subject to the Privilege. But, one or more of Mr. Gattineri's individual attorneys—Daniel Doherty, Esq. and/or Brad Bailey, Esq.— are present on the email chain thereby vitiating the Privilege.

Although not reflected anywhere on the Privilege Log, through emails with Mr. Gattineri's counsel pursuant to Local Rule 7.1, Defendants understand that Mr. Gattineri alleges certain communications are subject to two alleged joint defense agreements. Specifically, counsel for Mr. Gattineri stated:

> "[T]here were two oral joint defense agreements. One beginning in or around the summer of 2013 regarding the IEB investigation that involved attorneys for FBT, Gattineri, DeNunzio, Lohnes, Lightbody, Michael Flood and Wynn. The second JDA…concerned the criminal matters and was among Gattineri, DeNunzio and Lightbody.

---

[21] *See* Ex. 1 entries 3-6, 22, 24-25, 27-30, 33-34, 36-38, 40-44, 47, 51, 55-57, 64, 66-67, 73, 75, 80.

Ex. 13. Based on the privilege descriptions on Mr. Gattineri's Privilege Log none of the communications sought on Ex. 1 relate to either the IEB investigation or the criminal trial. As such, communications containing some combination of Mr. Gattineri, Attorney Feldman, Attorney Doherty, and/or Attorney Bailey should be produced.

## CONCLUSION

There is no attorney-client privilege between Mr. Gattineri and Attorney Feldman. Attorney Feldman represented an entity: FBT. Therefore, FBT held any attorney-client privileged that existed. *See Grand Jury Subpoena,* 274 F.3d at 571 ("[T]he default assumption is that the attorney only *represents* the corporate entity, not the individuals within the corporate sphere, and it is the individuals' burden to dispel that presumption." (emphasis in original)). Mr. Gattineri cannot meet the five-part test required to demonstrate Attorney Feldman represented him in an individual capacity. All of the communications listed on Mr. Gattineri's log relate to FBT's sale of the Property and are therefore not segrageble from issues related to the corporation.

Moreover, FBT's Privilege *has been waived.* FBT implicitly waived that Privilege by bringing the Legal Malpractice Action against Attorney Feldman and Davis Malm. That action places "at-issue" Attorney Feldman's legal advice in connection with the sale of the Property and that implicit at issue waiver should be extended to this Action to prevent Mr. Gattineri from attempting to use the Privilege as a both a sword and a shield. In addition, FBT has produced confidential communications between it and Attorney Feldman in document productions in various pending lawsuits, including this Action. That disclosure further vitiates any alleged Privilege by eliminating an essential element for a claim of attorney-client privilege: that the communications remain confidential.

As a result, Defendants respectfully request that this Court compel Mr. Gattineri to produce the 93 communications listed on Ex. 1 because they are not protected by the attorney-client

privilege or work product doctrine. In the alternative, Defendants request that this Court conduct an *in camera* review of these communications to determine whether they are indeed protected by the Privilege.

> Respectfully submitted,
>
> **WYNN MA, LLC and WYNN RESORTS, LTD.,**
>
> By their attorneys,
>
> */s/ Samuel M. Starr*
> Samuel M. Starr, BBO No. 477353
> Caitlin A. Hill, BBO No. 684774
> MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
>   & POPEO, P.C.
> One Financial Center
> Boston, MA 02111
> Tel:   617.542.6000
> Fax:   617.542.2241
> E-mail: tstarr@mintz.com
>         cahill@mintz.com

Dated:  November 15, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2019, the above document was served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants.

> ___/S/ Samuel M. Starr_____
> Samuel M. Starr