UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY GATTINERI, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 18-cv-11229-FDS |
| ) | |
| WYNN MA, LLC and WYNN ) | |
| RESORTS, LIMITED ) | |
| ) | |
| Defendants. ) | |
| ) | |
| WYNN MA, LLC, ) | |
| ) | |
| Plaintiff-in-Counterclaim, ) | |
| ) | |
| v. ) | |
| ) | |
| ANTHONY GATTINERI, ) | |
| ) | |
| Defendant-in-Counterclaim. ) | |
| ) | |

PLAINTIFF, ANTHONY GATTINERI'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL FULL AND COMPLETE RESPONSES
TO ITS FIRST SET OF INTERROGATORIES

Plaintiff, Anthony Gattineri ("Plaintiff" or "Mr. Gattineri"), submits this Opposition to

Defendants' Motion to Compel Full and Complete Responses to Its First Set of Interrogatories

("Defendants' Motion to Compel Further Responses"), and requests that this Court deny

Defendants' Motion to Compel Further Responses.  Plaintiff has not responded by way of Rule

33(d), and even if this Court finds that Plaintiff has implicitly invoked Rule 33(d), his response

adheres to the Rule because Defendants' Interrogatories are compilation requests and because

Defendants can locate the documents sought under Interrogatories 1, 2, and 5 as readily as

Plaintiff could.  Plaintiff relies upon the following in Opposition to Defendants' Motion to

Compel Further Responses:

## PROCEDURAL BACKGROUND

Defendant, Wynn MA, LLC, served its First Set of Interrogatories on Plaintiff on

September 25, 2019.  After Defendants' counsel agreed to a brief extension of time for Plaintiff

to provide his answers, Plaintiff responded on November 1, 2019.  Plaintiff objected to

Interrogatories 1, 2, and 5, as recited below:

### Interrogatory No. 1
Identify, by bates number, each document that you have produced in this Action
regarding, related to, or that references the San Diego Agreement.

### Answer to Interrogatory No. 1
Plaintiff objects to Interrogatory No. 1 on the grounds that it is unduly burdensome and
interposed for an improper purpose, such as to cause unnecessary delay, or needlessly
increase the cost of litigation for the Plaintiff.  Specifically, Defendant seeks information
which has already been made available to it through its requests pursuant to Fed. R. Civ.
P. 34.  As such, Plaintiff cannot be forced to make extremely time consuming and
onerous compilations of information where the documents containing the material
necessary for the requested compilations are already in Defendant's possession.

### Interrogatory No. 2
Identify, by bates number, each document that You have produced concerning the
allegations contained in ¶¶ 13, 28 and 35 of the Complaint.[1]

### Answer to Interrogatory No. 2
Plaintiff objects to Interrogatory No. 2 on the grounds that it is unduly burdensome and
interposed for an improper purpose, such as to cause unnecessary delay, or needlessly
increase the cost of litigation for the Plaintiff.  Specifically, Defendant seeks information
which has already been made available to it through its requests pursuant to Fed. R. Civ.
P. 34.  As such, Plaintiff cannot be forced to make extremely time consuming and

---

[1] ¶¶ 13, 28, and 35 of Plaintiff's Complaint are, respectively: ¶13 "Mr. Gattineri was opposed to accepting a lower price, insisting that the Casino Parcel was worth far more than $35 million for a non-casino development"; ¶28 "On the morning of June 14, 2014, Mr. DeSalvio and Mr. Gattineri met at 10:00 a.m. for breakfast at the Westgate Hotel in San Diego, where Mr. DeSalvio had spent the night (the "San Diego Meeting").  At the San Diego Meeting, Mr. Gattineri again refused to sign the Certificate telling Mr. DeSalvio that he saw no reason for the $40 million windfall to Wynn resulting from the reduction in purchase price.  Mr. Gattineri also reiterated to Mr. DeSalvio that he was very confident that the Casino Parcel was worth at least $75 million, if not more, for non-casino uses"; and ¶35 "Until the Certificate was delivered to the Gaming Commission, Mr. DeSalvio continued to stay in close contact with Mr. Gattineri to make sure it was accomplished as the two had agreed at the San Diego Meeting."  [Docket No. 1].

onerous compilations of information where the documents containing the material necessary for the requested compilations are already in Defendant's possession.

**Interrogatory No. 5**
Identify by bates number, each document You have produced in which You stated Your opposition to "accepting a lower price" as alleged in ¶ 13 of the Complaint.

**Answer to Interrogatory No. 5**
Plaintiff objects to this Interrogatory as being unduly burdensome and interposed for an improper purpose, such as to cause unnecessary delay, or needlessly increase the cost of litigation for the Plaintiff. Specifically, Defendant seeks information which has already been made available to it through its requests pursuant to Fed. R. Civ. P. 34. As such, Defendant has no right to require Plaintiff to make compilations of information where the documents containing the material necessary for the compilations are already available to Defendant.

See Exhibit A—Plaintiff's Answers to Interrogatories ("Plaintiff's Answers"). The parties discussed Plaintiff's Answers, amongst other discovery matters, via telephonic conference on November 7, 2019. Defendants' counsel filed their Motion to Compel Further Responses on November 15, 2019.

## ARGUMENT

I.    Plaintiff Neither Explicitly nor Implicitly Responded by way of Rule 33(d), but given the Interrogatories' unduly burdensome nature, outright objected to the Interrogatories in the traditional manner.

Courts must limit discovery where the discovery being sought is (1) unreasonably cumulative or duplicative, or able to be obtained from another, more convenient source that is less burdensome or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information sought by discovery; or (3) the burden or expense of the proposed discovery outweighs the discovery's likely benefit, taking into account the cases' needs, amount in controversy, parties' resources, importance of the issues at stake, and importance of the discovery sought in resolving said issues. See Fed. R. Civ. P. 26(b)(2)(C). When objecting to an interrogatory, the objecting party must state the grounds for objection with specificity. Fed. R.

Civ. P. 33(b)(4). The "mere statement by a party that the interrogatory…was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." Sánchez–Medina v. Unicco Service Co., 265 F.R.D. 29, 27 (D.P.R. 2010) (citations omitted); see also Cutler v. Lewiston Daily Sun, 105 F.R.D. 137, 142 (D. Me. 1985) (rejecting objections that information sought would be unduly burdensome or expensive where the objecting party gave no indication why providing the discovery would be unduly burdensome or expensive, or why the information is unavailable). Here, Plaintiff specifically stated his grounds for objection:

> on the grounds that it is unduly burdensome and interposed for an improper purpose, such as to cause unnecessary delay, or needlessly increase the cost of litigation for the Plaintiff. Specifically, Defendant seeks information which has already been made available to it through its requests pursuant to Fed. R. Civ. P. 34. As such, Plaintiff cannot be forced to make extremely time consuming and onerous compilations of information where the documents containing the material necessary for the requested compilations are already in Defendant's possession.

See Exhibit A—Plaintiff's Answers to Interrogatories.

A survey of caselaw in this jurisdiction reveals that courts will often grant motions to compel despite objections that compliance with the request would be burdensome, *when the discovery sought is* only *in the objecting party's possession*. In Banana Service, the court understood that extensive search of past records of the objecting party would be necessary in order to obtain the answers requested. Banana Serv. Co. v. United Fruit Co., 15 F.R.D. 106, 108 (D. Mass. 1953). It nonetheless held that details of the objecting party's subsidiaries, nature of certain companies and their assets prior to acquisition, and the method of acquisition *would only be available, if at all, in the records of the objecting party*. Id. Realizing that the interrogating party had no access to the information sought other than the interrogated party's review of records, and because the information sought was highly relevant to the issues raised, the court granted the motion to compel. Id. More recently, courts have denied motions to compel further

answers to interrogatories where the information sought could instead be obtained directly from the objecting party's produced records. Puerto Rico Aqueduct and Sewer Authority v. Clow Corp., 108 F.R.D. 304, 312 (D.P.R. 1985) (holding that so long as records were produced, thereby allowing the interrogating party to seek the information themselves, the interrogatories need not be answered in the traditional manner); see also Dibb v. Alliance One Receivables Mgt., Inc., 2015 WL 5555712, at *4-5 (WD Wash. Sept. 21, 2015) (realizing that where the interrogated party has already responded with the information sought and cannot create evidence, it cannot be compelled to compile lists which the interrogating party could do themselves); Konczakowski v. Paramount Pictures, Inc. Byers Theaters, Inc. v. Murphy, 1 F.R.D. 286 (D.C.Va.1940) (one party cannot require another to make investigation, research or compilation of data for him that he can equally well make for himself); Segarra v. Waterman S.S. Corp., 41 F.R.D. 245 (D.C. Puerto Rico, 1966) (Interrogatory should not impose upon opposing party duty to make inquiries and investigations; litigant cannot compel adversary to do his work).

The Motion to Compel Further Responses attempts to trap Plaintiff in a Rule 33(d) paradox of sorts. If Plaintiff were to adhere to the faulty logic in Defendants' argument, Plaintiff would simply have two options: (1) answer the interrogatories in the traditional manner, which would involve listing every single applicable document; or (2) comport with the requirements of Rule 33(d), potentially requiring Plaintiff to identify every single document individually, essentially leading to the same result. Notably, Plaintiff has not invoked Rule 33(d) in any of his answers, despite Defendants' argument to the contrary. Plaintiff has instead stated his grounds for objection with specificity as set forth above. Plaintiff has not responded with a "mere [boilerplate] statement" as to the burdensome nature of the interrogatories, by noting the objections relating to burden and unnecessary costs are based upon the fact that the documents

containing the information sought is just as readily available to Defendants at this juncture as it would be to Plaintiff.

When Defendants served their Request for Production of Documents upon Plaintiff, it included Mintz's "Standard Production Specifications" which stated, among other things, that "[a]ll documents and email data shall be produced in a structured format prepared for Relativity."[2]  See Exhibit B—Mintz Production Specifications.  Plaintiff responded to Defendants' document request and thereafter began a rolling production of all responsive, non-privileged documents in accordance with the Mintz Production Specifications.  In working with Plaintiff's third-party eDiscovery services firm, HaystackID[3] (which Plaintiff engaged for this matter), Plaintiff's counsel utilized Defendants' document requests to craft a list of search terms to ensure Plaintiff's production was tailored to be as complete and responsive as possible.  Plaintiff's search terms (which Plaintiff is willing to provide to the Court for in-camera review if necessary or helpful), were comprised of 46 individual terms specifically customized to ensure Plaintiff's nearly 200,000 pages of documents were appropriately parsed down to approximately 9,000 responsive pages.

Plaintiff would be forced to incur an expensive and time-consuming review of already produced documents in order to obtain the interrogatory answers requested. Plaintiff's argument does not end with the expensive and burdensome nature of Interrogatories 1, 2, and 5, however. Where this matter crucially differs from cases where further answers were ordered is that the answers sought are not based on information solely in the possession of Plaintiff.  While Plaintiff is not refuting the relevance of the paragraphs of his Complaint referenced in Defendants'

---

[2] Relativity is an eDiscovery Software Solutions company which provides law firms with tools for managing the discovery process during litigation.
[3] HaystackID, which uses Relativity, is an eDiscovery services firm which helps law firms faced with data-intensive litigation.

Interrogatories, nor the relevance of the "San Diego Agreement" or his "opposition to accepting a lower price," it is critical to note that the Defendants already have entirely unrestricted access to the approximately 9,000 pages of responsive documents that Plaintiff would be required to search through. Not only do all documents previously produced "include fully [electronically] searchable text," but document attachment groups have been produced together with sequential numbering, the data has been de-duplicated, and everything produced is compatible with the Relativity database format.  See Exhibit B—Mintz Production Specifications. While an objecting party's complaints of undue burden and expense are generally weighed less by the court when the discovery sought would only be available through the objecting party's records (Banana Service, 15 F.R.D. at 108), that is absolutely not the case here, where Defendants have had ample opportunity to obtain the bates numbers it seeks through their own review and search of the documents long-since produced pursuant to their Rule 34 requests.

II.  <u>Even if Plaintiff has Implicitly Invoked Rule 33(d), his Answers to Defendants'
Interrogatories are Sufficient.</u>

Rule 33 (d) provides an Option to Produce Business Records, as follows:

> (d) If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
>> (1) Specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>> (2) Giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

A.    Even if Plaintiff has Implicitly Invoked Rule 33(d), use of the Rule is Applicable where Defendants' Interrogatories do not Seek Information in Addition to the Identification of Documents, and are Instead More Akin to a Compilation of Data.

Generally, an interrogatory may be objectionable where it requests information already available to the interrogating party in its own files.  US v. Renault, Inc., 27 FRD 23 (S.D.N.Y. 1960).  However, where information is clearly relevant and the interrogated party would have to gather the information sought for its own preparation for trial, the interrogatory is not necessarily objectionable.  Mitchell v. Savini, 25 F.R.D. 275 (D. Mass. 1960).  Courts diverge from this reasoning where the information sought is simply a compilation of the information which is already available to the interrogating party.  Leonia Amusement Corp v. Loew's Inc., 18 F.R.D. 503 (S.D.N.Y. 1955).  Several jurisdictions have recognized that Rule 33(d) is best applied to "interrogatories of an objective nature that require compilation of information."  U.S. ex rel. Martino-Fleming v. South Bay Mental Health Center, 332 F.R.D. 1, 9-10 (D. Mass. 2019). (finding Rule 33(d) applicable where an interrogatory was framed more as a compilation rather than contention interrogatory).  Although interrogatories are used in order for a party to obtain from an adverse party the information that the adversary may have in its possession (Reed v. Swift & Co., 11 F.R.D. 273 (1951)), a litigant may not compel his adversary to go to work for him.  Riss & Co. v. Association of American Railroads, 23 F.R.D. 211 (1959). A request for compilation of information should not be ordered where the interrogating party already has the information needed for such a compilation. Leonia Amusement, 18 F.R.D. at 507.

In Martino-Fleming, the interrogating party requested that the interrogated party:

Identify each of [their] unlicensed and licensed counselors, social workers, clinical directors, and regional directors at each South Bay facility, including the following information:

a.    Their title, dates of employment, employment status (full or part time), dates holding each title, the specific South Bay facility at which they worked, whether

they provided or supervised services provided to Mass Health members, or were otherwise associated, and the dates they provided or supervised services at each South Bay facility listed;

b. The qualifications possessed by each identified person during their employment by or association with [interrogated party], including post-secondary education history, degrees awarded (including the field in which the degree was awarded), licenses, board certifications and/or eligibility, work history, supervised clinical experience (including in an administrative capacity), internship experience, and the dates of the foregoing;

c. The specific dates during which each counselor, social worker, supervisor, clinical director, and regional director was licensed or unlicensed while employed by or affiliated with South Bay;

d. The supervisor, if any, of each counselor, social worker, supervisor, and clinical director, including the specific dates during which the supervisor supervised the counselor, social worker, supervisor, and clinical director;

e. The dates of each counselor, social worker, supervisor, and clinical director's first 90 days of employment or association with [interrogated party] …

Martino-Fleming, 32 F.R.D. at 3.  The Martino-Fleming Court found that the responding party had properly responded by way of Rule 33(d) in part because the interrogatory there at issue, as here, was framed more as a compilation than a contention interrogatory.  Id. at 10.

Defendants' Interrogatory numbers 1, 2, and 5 in this instance cannot possibly be labeled as contention interrogatories in light of the Martino-Fleming ruling.  The interrogatory at issue in Martino-Fleming was determined to be more of an objective interrogatory than one of contention, where it called for the proffering of an extensive amount of information to be compiled.  Numbers 1, 2, and 5 simply seek that the bates numbers of certain documents (which have already been provided to Defendants) be listed for Defendants' ease of review.  Such an interrogatory is not of the nature faced by the Martino-Fleming Court, but is instead tantamount to a homework assignment, completion of which both parties are equally capable and informed by document production.

Vazquez-Fernandez v. Cambridge College, Inc., as cited by the Defendants, proffers further illumination as to the difference between contention interrogatories and compilation

interrogatories.  Vazquez-Fernandez v. Cambridge College, Inc., 269 F.R.D. 150 (D.P.R. 2010).

Vazquez-Fernandez states in part that it is improper to invoke the option to produce business

records where the interrogatory seeks information *and* the identification of documents that

support this answer, instead of a compilation of data.  Id. at 158.  One such interrogatory asked

the interrogated party to "[s]tate the reason Dr. Pedro Schuck moved or transferred to

Massachusetts and identify all the documents that related to such movement or transfer."  Id. at

157.  The interrogatories examined by Vazquez-Fernandez clearly asked specific questions

regarding employment decisions made by the defendant, in addition to requesting the

identification of documents.

In Torres v. Johnson & Johnson, also cited by Defendants, the interrogatories similarly

asked for information beyond simply identifying documents by bates number.  Torres v. Johnson

& Johnson, 2018 WL 4054904 (D. Mass. 2018).  There, the interrogated party was asked to:

> explain the complete process it followed to obtain "FDA 501K market clearance" for the 3D Patch,
> including: (a) identifying each individual involved with designing or testing the product; (b)
> identifying all safety studies conducted for the product and those who conducted the studies; (c) if
> Ethicon claimed that the 3d Patch was the substantial equivalent of another product on the market,
> identifying the predicate device, stating when it was given FDA clearance, and identifying all safety
> studies done on it before it was given FDA clearance, including identifying all those involved in
> conducting the studies; (d) if any substantially equivalent device was identified in response to
> subpart (c), identifying that device, stating when it was given FDA clearance, identifying all safety
> studies done on it before it was given FDA clearance, including identifying all individuals who
> conducted the studies; and (e) identifying where the 3d Patch was manufactured and identifying all
> employees responsible for material specifications and quality assurance (Dkt. No. 31-2 at 5-6).

Id. at 2.  The Torres Court held that the interrogated party properly responded by way of identifying

specific documents for (b) through (d) as opposed to answering the interrogatories in the traditional

manner.  Id. at 3.

Vazquez-Fernandez makes the important distinction, further justified by Torres, that

33(d) cannot be invoked where the interrogatory seeks information *in addition to* the

identification of documents which support the answer.  See generally <u>Vazquez-Fernandez</u>, 269 F.R.D. 150; <u>Torres</u>, 2018 WL 4054904.  Interrogatories 1, 2, and 5 contrast sharply with the interrogatories sought in <u>Vazquez-Fernandez</u> and <u>Torres</u>.  Numbers 1, 2, and 5, in this instance seek only the compilation of lists of certain documents by bates number.  Defendants are not seeking information, but simply the identification of documents.  Because Defendants' Interrogatories 1, 2 and 5 are simply objective compilation interrogatories, not interrogatories of contention, application of Rule 33(d) is appropriate

      B.    <u>Wynn has the Ability to Locate and Identify the Records Sought Under Interrogatories 1, 2, and 5 as Readily as Plaintiff Could.</u>

A party may invoke Rule 33(d) in the event any interrogatories require them to "engage in burdensome or expensive research into his own business records in order to give an answer."  Fed. R. Civ. P. 33 advisory committee note.  Under Rule 33(d), the records must simply be identified with enough detail to enable the interrogating party to locate and identify them *as readily as the responding party could*.  Fed. R. Civ. P. 33(d)(1).  The party must also: affirm that the records contain the information sought; demonstrate that answering the interrogatory conventionally would impose a burden; and that the burden of gathering the information sought would be substantially the same for both parties.  <u>U.S. ex rel. Martino-Fleming</u> v. <u>South Bay Mental Health Center, Inc.</u>, 332 F.R.D. 1, 6 (2019) (internal citations omitted).  Where the responding party properly seeks to rely upon Rule 33(d) in responding to an Interrogatory, the requesting party is then required to establish that deriving answers from business records would not be substantially the same for each party.  <u>Id</u>.  See also <u>PRASA</u>, 108 F.R.D. at 307 (party seeking production has "the onus of proving that their burden of researching an answer is heavier than" the objecting party's).

The <u>Sabel</u> Court engaged in a fact-specific inquiry surrounding the interrogated party's use of Rule 33(d) in order to ultimately grant the motion to compel.  <u>Sabel</u> v. <u>Mead Johnson & Co.</u>, 110 F.R.D. 553 (D. Mass. 1986).  In <u>Sabel</u>, the interrogated party answered interrogatories by invoking Rule 33(d) and directed the plaintiff to a document which the defendant continuously updated, the defendant's employees were charged with the responsibility of maintaining, and contained 220 volumes.  <u>Id</u>. at 554. Each of the 220 volumes averaged approximately 700 pages in length.  <u>Id</u>.  Perhaps most importantly, the approximately 154,000 pages were only available for inspection in Evansville, Indiana.  <u>Id</u>. at 557. While <u>Sabel</u> granted the motion to compel in part because of the inequities between the parties concerning their respective familiarity with the documents, the court was quick to note that "[w]hile an interrogated party will always be more familiar with its own records than the interrogating party, familiarity with the records cannot be the sole test.  The inquiry is whether the burdens are *substantially* the same, not whether they are precisely equal."  <u>Id</u>. at 556.

Had the facts in the present matter come anywhere close to mirroring those presented in <u>Sabel</u>, a ruling in favor of the interrogating party might be more likely.  Instead, every facet of the document production in this matter have put the Defendants in a far more advantageous position than the interrogating party in <u>Sabel</u>, rendering Defendants' reliance on <u>Sabel</u> entirely misplaced.  As opposed to an ever-changing, 154,000-page document which was only made available for physical inspection halfway across the country, Plaintiff has provided Defendants with a 9,000-page production of entirely responsive documents through the exact eDiscovery platform specified by Defendants' counsel's protocol.  Plaintiff's identification, by bates number, of documents already produced to Defendants is entirely unnecessary where Defendants are in possession of the identical documents and the interrogatory answer can be determined by

examining such documents.  Regarding the relative ease with which Plaintiff and Defendants could search these documents for the bates numbers sought with the fully searchable text, the burden is substantially the same.  Gone are the days of delivering a trailer of documents to counsel's office; Defendants can search the 9,000 pages with a few strokes of computer keys. Furthermore, it would be folly to believe that Mr. Gattineri is as familiar with the documents produced (which originally numbered nearly 200,000, and spanned over nearly ten years) as a corporation like in <u>Sabel</u> which had an entire portion of its staff dedicated to the responsibility of maintaining a similar initial number of documents.  Even if Plaintiff is more familiar with the documents than Defendants, the burden upon each party is *substantially the same*.  Indeed, Defendants could just as easily search through the production as Plaintiff could (although likely even easier, given the relative resources of each party).

<u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the Plaintiff requests that this Court deny Defendants' Motion to Compel Full and Complete Responses to its First Set of Interrogatories. Plaintiff should not be beholden to the standards of Rule 33(d) in this instance where he objected in the traditional manner and had adequately specified and explained the basis of his objections— specifically, that to comply would be unnecessarily burdensome and expensive where the Defendants have ample opportunity to inspect the documents for themselves.  Even if Rule 33(d) applies, Plaintiff rightly invoked the Rule, as Interrogatories 1, 2, and 5 seek no information in addition to the identification of documents, and amount to nothing more than requests for compilation.  Pursuant to Rule 33(d), Plaintiff's answers have sufficiently identified the documents to allow the Defendants to locate and identify them as readily as Plaintiff could, affirmed that the compilation sought was contained within the document production,

demonstrated that answering in the traditional manner would be burdensome, and that the burden would at least be substantially the same for either party.

Respectfully submitted,

ANTHONY GATTINERI, Plaintiff

By his attorneys,

Dated: November 27, 2019

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)
Todd B. Gordon (BBO No. 652482)
Robert A. DiSorbo (BBO No. 699357)
Kevin A. Robinson (BBO No. 703865)
The Gordon Law Firm LLP
River Place
57 River Street
Wellesley, MA 02481
Tel:    (617) 261-0100
Fax:    (617) 261-0789
Email:  sgordon@gordonfirm.com
        tgordon@gordonfirm.com
        rdisorbo@gordonfirm.com
        krobinson@gordonfirm.com

<u>CERTIFICATE OF SERVICE</u>

I, Stephen F. Gordon, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 27, 2019.

/s/ Stephen F. Gordon
Stephen F. Gordon (BBO No. 203600)

P:\Clients-GLF\Gattineri, A (Wynn Casino)\Plead\P's Opposition to D's MTC Ints.docx

14